Derbigny, J.
delivered the opinionof the court. Judgment had been given in the district court, in the first of these cases, and an appeal from it claimed by the defendant Cureton, when the second suit was instituted by him upon the same matter in dispute. His adverse party, Turnbull, pleaded against it the authority of res judicata—and the plea being When every *38 not sustained by the court, the cause was investigated, tried and judged, as if no judgment had ever been rendered on the subject.
West'n District.
September, 1820.
The judge was certainly correct, in considering a case pending before the court of appeals, as one which had not acquired the authority of the thing judged ; though he was probably mistaken in allowing the same parties to prosecute a second suit, on the same subject, while the first was pending. Both suits, however, being now before us, and the law making it our duty to disregard defects of form, and to attend only to the rights of the parties, we will proceed to investigate these cases together, as cross actions consolidated in one.
The dispute here arises from the difficulty of locating three grants of land, which are of the same date, and the surveys of which were not returned into the land office of the United States for this district, as required by the certificate of the commissioners.
These three grants were formerly united in the hands of one person, Abraham Martin, now deceased, who obtained from the commissioners a separate certificate for each. After Abraham Martin’s death, each of these tracts was sold, by the name of the original grantee, so that each purchaser has a right to the quantity of land, mentioned in the certificate of the commissioners, and to the *39 location which it calls for, as far as that can be ascertained.
Of the three tracts, Turnbull has brought the two upper ones, to wit: Dowd’s grant for two hundred arpens, and Garnett’s grant for four hundred. Cureton is the purchaser of the lower tract or John Tear’s grant of seven hundred and fifty-six arpens. These grants call to bound upon each other, and none of them are limited by any fixed line; nor is there any written evidence that the lower line of the land of Eleonore Nevill, by which Dowd’s tract is said to be bounded, is fixed in any particular place. In this deficiency of written proof, to fix the limits of these respective tracts, recourse must be had to parol testimony.
We have been called upon to declare whether parol evidence can be admitted in a case like this, to explain that which is left doubtful in the title—and although the parties do not appear to have excepted to the introduction of the oral testimony, which is spread on record, we have no objection to state it as our opinion that it was properly admitted. A grant, which gives to the party a certain tract of land, said to bind on the land of another person, the situation of which is also uncertain, contains that defect which is known in law by the name of latent ambiguity. It may be explained by parol evidence, so far as to shew what such limits ought *40 to be: for, without such explanation, the grant would have no effect. The doctrine upon this subject is that when every thing in an instrument seems right and clear, but the meaning of it is uncertain, the proof of the fact, which may remove the doubt, is admissible. On this matter, we refer to Peake's Evidence, chap. 2, sect. 5, and to Philips's Evidence, chap. 10, sect. 1.
To find out the limits, by which these different grants ought to be bounded, we have one fact sufficiently ascertained: which is that the gulley marked on the plat near the cotton gin of Turnbull, was always considered by the original settlers, Tear and Garnett, as their common boundary ; in corroboration of which fact, it is also in evidence that Garnett lived four or five arpens above the gulley, and Tear five or six arpens below it. In locating the lands of two adjoining settlers, who obtained grants for the land on which they actually lived, but without a sufficient description of their limits, it would certainly be a safe rule to run a line between them at an equal distance from each settlement. Should this be done here, it would place the line near the very spot, which the witnesses point out, as the boundary understood between the original grantees. We think, therefore, that this is the place, where the line of division between the lands of the present parties ought to be fixed.
*41 The next enquiry is, how shall this line run? It has been the almost invariable practice in this country, in locating grants said to have their front on a water course, to run the lateral lines at right angles with the front, wherever that could be done. So, if there was in this case no evidence concerning the direction of these lines, we would deem it reasonable to order them to be run according to the common practice, which would, we think, bring them very near the direction represented in the plot filed in this record. But, independently of that, one of the witness has positively sworn that the lower line of Eleonor Nevill, now Eleonor Briggs, runs nearly East. That being the boundary between her and Dowd’s grant, and Dowd’s grant adjoining Garnett’s, the direction of their lines must be the same.
As to the manner, in which Cureton may locate his grant of seven hundred and fifty-six arpens, it is a point which, we think, cannot be decided between the present parties. It is enough to say that his upper limit, on bayou Robert, ought to be fixed at the mouth of the gulley, immediately below Turnbull’s cotton gin—and that his pretentions, to run his upper line parallel with the back line of Alexander Fulton, are not maintainable—because the grants of Garnett and Dowd, which are described to have a determinate number of arpens in front, *42 must be located conformably to that description—and because his own certificate calls not for any particular quantity of land in front, nor for parallel lateral lines, nor for any boundaries, either above or below: but has left the land to be surveyed, it seems, as the locality will permit, in the following words: “forty arpens depth with so much front, as will include the quantity.”
Johnson and Wilson for Turnbull, Baldwin for Cureton.
It is therefore, ordered, adjudged and decreed that the judgments rendered by the district court in these cases be annulled, avoided and reversed—and this court, proceeding to give such judgment as they think ought to have been given below, do further adjudge and decree that the lower line of Walter Turnbull’s land be fixed at the mouth of the gulley, immediately below his cotton gin, running from thence parallel to the upper line of Dowd’s grant adjoining the land of Eleonor Biggs—and it is further adjudged and decreed that each party pay his own costs, in both courts.